Original
No. 2012-334

## PETITION OF MICHAEL CARRIER
### (New Hampshire Retirement System)

Argued: November 7, 2013
Opinion Issued: December 6, 2013

*Molan, Milner & Krupski, PLLC*, of Concord (*Robert F. Berry, Jr.* and *Glenn R. Milner* on the brief, and *Mr. Milner* orally), for the petitioner.

*Getman, Schulthess & Steere, P.A.*, of Manchester (*Andrew R. Schulman* on the brief and orally), for the respondent.

DALIANIS, C.J. The petitioner, Michael Carrier, seeks review of a ruling of the board of trustees (board) of the respondent, New Hampshire Retirement System (NHRS), that, as fire chief for Hampstead, he was required to be a member of the NHRS. We affirm.

### I. *Background*

We briefly recite the relevant facts. The petitioner worked in Londonderry as a full-time firefighter and later as the town's fire chief.

When he worked in Londonderry, the petitioner was enrolled in the NHRS. He retired from his Londonderry position in July 2007, and began receiving retirement benefits. In January 2009, the petitioner became the full-time fire chief for Hampstead. However, he did not re-enroll in the NHRS. Instead, he received both his NHRS retirement benefits and his Hampstead fire chief salary.

In February 2010, the NHRS notified the petitioner that his Hampstead employment was "subject to NHRS mandatory enrollment pursuant to RSA 100-A:1, VIII." The NHRS informed him that he was "required to be restored to active, contributory service immediately" and that his monthly pension benefits would cease as of March 2010 for "as long as [he] . . . occup[ied] this full-time position." The petitioner retired from his Hampstead position in May 2010.

The petitioner filed a timely appeal of the February 2010 decision with the board. The board determined that, because the petitioner collected his retirement benefits while still employed full-time by Hampstead, he was overpaid $70,892.22 in pension benefits and $9,764.56 in medical subsidy benefits. The board ordered the petitioner restored to service and required that those amounts be recouped from his future benefit payments. Although the petitioner moved for reconsideration, his motion was denied. He then filed this petition for writ of certiorari.

## II. *Discussion*

### A. *Standards of Review*

"Because RSA chapter 100-A does not provide for judicial review, a writ of certiorari is the sole remedy available to a party aggrieved by a decision of the NHRS." *Petition of State Employees' Assoc.*, 161 N.H. 476, 478 (2011) (quotation and brackets omitted). "Our standard of review is whether the board acted illegally with respect to jurisdiction, authority or observance of the law, whereby it arrived at a conclusion which cannot legally or reasonably be made, or abused its discretion or acted arbitrarily, unreasonably, or capriciously." *Id.* (quotation omitted). "[I]t is not our function to make *de novo* findings or to substitute our judgment for that of the board." *Day v. N.H. Retirement System*, 138 N.H. 120, 127 (1993). Although the NHRS conducted a three-day evidentiary hearing in this matter, the petitioner has not provided a transcript of that hearing as part of the record before us. Absent a transcript, we must assume that there is evidence in the record to support the board's factual findings. *See Bean v. Red Oak Prop. Mgmt.*, 151 N.H. 248, 250 (2004).

Resolving the issues in this case requires that we engage in statutory interpretation. *State Employees' Assoc. of N.H. v. State of N.H.*, 161 N.H.

730, 738 (2011). Statutory interpretation is a question of law, which we review *de novo. Id.* In matters of statutory interpretation, we are the final arbiter of the intent of the legislature as expressed in the words of the statute considered as a whole. *Id.* We first look to the language of the statute itself, and, if possible, construe that language according to its plain and ordinary meaning. *Id.* We interpret legislative intent from the statute as written and will not consider what the legislature might have said or add language that the legislature did not see fit to include. *Id.* We construe all parts of a statute together to effectuate its overall purpose and avoid an absurd or unjust result. *Id.* Moreover, we do not consider words and phrases in isolation, but rather within the context of the statute as a whole. *Id.* This enables us to better discern the legislature's intent and to interpret statutory language in light of the policy or purpose sought to be advanced by the statutory scheme. *Id.* at 738-39. "If a statute is ambiguous, however, we consider legislative history to aid our analysis." *Petition of State Employees' Assoc.*, 161 N.H. at 479 (quotation omitted).

B. *The NHRS*

The NHRS "is a tax qualified pension trust for certain public employees." *City of Concord v. State of N.H.*, 164 N.H. 130, 132 (2012); *see* RSA 100-A:2 (2013). Membership in the NHRS is limited to certain public employees, teachers, permanent police officers, and permanent firefighters, all as defined in RSA 100-A:1 (2013). *See Petition of State Employees' Assoc.*, 161 N.H. at 477. Although the NHRS statutes refer to "firemen" and "policemen," in this opinion we use the terms "firefighter" and "police officer," except when quoting directly from the pertinent statutes.

Members defined as teachers or as certain other public employees are classified as group I members of the NHRS, while members defined as permanent police officers or permanent firefighters are classified as group II members. *See* RSA 100-A:1, V-VIII, X. Under the provisions of RSA chapter 100-A, group II members are entitled to apply for retirement earlier than group I members, and to receive certain other more favorable retirement benefits. *Petition of State Employees' Assoc.*, 161 N.H. at 477; *see* RSA 100-A:52, :52-a, :52-b (2013). Membership in the NHRS is mandatory for group I and group II members. *See* RSA 100-A:3, I(a) (Supp. 2007) (amended 2011). By contrast, NHRS membership is optional for, among others, "elected officials [and] officials appointed for fixed terms." *Id.*

## C. *Petitioner's Arguments*

### 1. *Whether Petitioner Was a Permanent Firefighter*

The petitioner first argues that, as the Hampstead fire chief, he was not a permanent firefighter for the purposes of mandatory group II membership. Under RSA 100-A:1, VIII, a permanent firefighter is "any person, whether elected or appointed, who is regularly employed on a full-time basis" either by the State or a political subdivision thereof "in a job certified . . . as conforming to the requirements of" RSA 100-A:1, VIII.

For a job to be certified as a permanent firefighter position under RSA 100-A:1, VIII, it must entail "the authority and responsibility to engage in the prevention, control, or extinguishment of fires," and the performance of "activities that are required for and directly concerned with the prevention, control, or extinguishment of fires, including incidental non-firefighting functions." RSA 100-A:1, VIII(a)(1). Further, the job must require that the firefighter be "fully certified as a firefighter by the New Hampshire fire standards and training commission" and that the firefighter "meet all physical, mental, educational, and other qualifications for continuing certification as a firefighter that may be established by the certifying authority." RSA 100-A:1, VIII(a)(2), (3). Additionally the term "permanent fireman" does not include "[a]ny dispatcher, mechanic, electrician, laboratory or clerical worker, technical expert" or "[a]ny other person whose normal duties entail only indirect, occasional, or short-term exposure, or no exposure, to the hazards of firefighting." RSA 100-A:1, VIII-a (2013).

■ Thus, the definition of permanent firefighter in RSA 100-A:1, VIII requires (a) regular, full-time employment in (b) a position that has been certified as (c) a firefighter position that, among other things, (d) has as a job requirement full certification as a firefighter by the fire standards and training commission. The board determined that the petitioner met the statutory definition, and we agree. The petitioner was regularly employed full-time as the Hampstead fire chief in a position that the town's governing body certified as meeting all of the statutory requirements.

Although the petitioner argues that he was not a permanent firefighter because his fire certification lapsed, we agree with the board that this did not affect the status of the Hampstead fire chief position for the purposes of the NHRS. When he was employed as the Hampstead fire chief, the petitioner occupied a position that required him to be fully certified as a firefighter.

The petitioner contends that he was not a permanent firefighter because his normal duties entailed "only indirect, occasional, or short term exposure to the hazards of firefighting." RSA 100-A:1, VIII-a. However, the board

found that the normal duties of the fire chief position "contemplate more than indirect exposure to the hazards of firefighting." The job description for the position supports this finding. It states that the fire chief is "[r]esponsible for planning, directing and coordinating all fire service activities including those pertaining to fire fighting [and] fire prevention." Specifically, the position vests the fire chief with "[s]ole and absolute command at fires and alarms of fires" and requires the fire chief to "direct all measures deemed necessary for the preservation of life and extinguishing of fire." The duties of the fire chief include "[d]irect[ing] the scene at all fire and rescue calls."

The petitioner argues that, notwithstanding the job description, he, personally, was only indirectly and occasionally exposed to the hazards of firefighting. Even if we assume, without deciding, that the board was not entitled to rely upon the job description alone, since the petitioner has failed to provide a transcript, we must assume that the evidence supports the board's decision. *See Bean*, 151 N.H. at 250.

### 2. *Whether Petitioner was an Official Appointed for a Fixed Term*

The petitioner next asserts that because he was appointed for a fixed term, he was not required to be a member of the NHRS. Pursuant to the version of RSA 100-A:3, I(a) that applies to this case, NHRS membership is "optional in the case of elected officials, *officials appointed for fixed terms*, unclassified state employees, or those employees of the general court who are eligible for membership in the retirement system." (Emphasis added.) The petitioner contends that this exception to mandatory NHRS membership applied to him.

We first examine whether the petitioner was an "official" appointed for a fixed term within the meaning of the pertinent NHRS statutes. The plain meaning of the word "official" is "one who holds or is invested with an office." WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY 1567 (unabridged ed. 2002). In the context of this case, we conclude that the word "official" is ambiguous because it is unclear whether it refers to individuals who are fire chiefs. Therefore, we review legislative history to construe its meaning. *See Petition of State Employees' Assoc.*, 161 N.H. at 479.

The legislative history of the NHRS statutes establishes that the phrase "officials appointed for fixed terms" does not apply to group II members, such as the petitioner. The NHRS is a successor to four separate statutory retirement systems for: (1) full-time State employees; (2) permanent firefighters; (3) permanent police officers; and (4) teachers. *See* RSA 100-A:35, :36-a, :36-e, :36-g (2013) (merging into the NHRS former retirement systems for State employees, permanent firefighters, permanent police officers, and teachers). The former State employee retirement

system mandated enrollment for certain full-time State employees, but provided that "membership shall be optional in the case of elected officials or officials appointed for fixed terms." RSA 100:1, :3, I (1955) (repealed 1975). By contrast, the other three predecessor retirement systems did not contain exceptions for "elected officials or officials appointed for fixed terms." *See* RSA 102:2, :5 (2013) (firefighter system); RSA 103:2, :4 (2013) (police officer system); RSA 192:3 (1955) (repealed 1989) (teacher system).

After the separate retirement systems were merged into the NHRS, the language regarding optional NHRS membership for elected officials and officials appointed for fixed terms was retained. However, there is no indication that the legislature intended this language to apply to group II members (police officers and firefighters).

■ The board's longstanding statutory interpretation supports our construction. Since 1991, the board has decided that the statutory reference to an official appointed to a fixed term does not apply to a police chief, appointed and employed under a fixed term contract. Such individuals, like fire chiefs, are members of group II. *See* RSA 100-A:1, X. Although we are not bound by the board's statutory interpretation, "it is well established in our case law that an interpretation of a statute by the agency charged with its administration is entitled to deference." *Appeal of Town of Seabrook*, 163 N.H. 635, 644 (2012). In this case, the board has applied its longstanding interpretation without "any interference by the legislature." *Bel Air Assocs. v. N.H. Dep't of Health & Human Servs.*, 154 N.H. 228, 234 (2006) (quotation omitted). This "is evidence that the administrative construction conforms to the legislative intent." *Id.* (quotation omitted).

The petitioner contends that, in fact, the board "has determined that the exception[ ]" for an official appointed to a fixed term applies to permanent police officers. However, the board order upon which he relies concerned a group I member, not a group II member, such as a police officer. *See* RSA 100-A:1, X(a) (defining group I members), (b) (defining group II members). In that order, the board concluded that "the express terms of [the individual's] full-time Group I employment qualified [him] as an 'official appointed for a fixed term' and exempted [him] from the mandatory participation requirement of RSA 100-A:3." Thus, the order upon which the petitioner relies supports our conclusion that the phrase "officials appointed for fixed terms" applies to group I members, but does not apply to group II members.

### 3. *Waiver of Recoupment*

Finally, the petitioner contends that the board erred by not considering whether to waive recoupment in this case. The record demonstrates that the board fully considered and rejected the petitioner's waiver request.

Although the petitioner asserts that the board should have granted his request "in the interest of justice and fairness," absent a transcript, we must assume that the evidence supports the board's rejection of his waiver request. *See Bean*, 151 N.H. at 250.

### III. *Conclusion*

For all of the above-stated reasons, we conclude that the petitioner has failed to demonstrate that the board "acted illegally with respect to jurisdiction, authority or observance of the law, whereby it arrived at a conclusion which cannot legally or reasonably be made, or abused its discretion or acted arbitrarily, unreasonably, or capriciously." *Petition of State Employees' Assoc.*, 161 N.H. at 478 (quotation omitted). Accordingly, we affirm its decision.

*Affirmed.*

HICKS, CONBOY, LYNN and BASSETT, JJ., concurred.