NOTICE:  This opinion is subject to motions for rehearing under Rule 22 as well as formal revision before publication in the New Hampshire Reports. Readers are requested to notify the Reporter, Supreme Court of New Hampshire, One Charles Doe Drive, Concord, New Hampshire 03301, of any editorial errors in order that corrections may be made before the opinion goes to press.  Errors may be reported by E-mail at the following address: reporter@courts.state.nh.us. Opinions are available on the Internet by 9:00 a.m. on the morning of their release. The direct address of the court's home page is: http://www.courts.state.nh.us/supreme.

THE SUPREME COURT OF NEW HAMPSHIRE

_____

Rockingham
No. 2012-873


IN RE G.G.


Argued:  September 12, 2013
Opinion Issued:  April 18, 2014


Joseph A. Foster, attorney general (Stephen G. LaBonte, assistant attorney general, on the brief, and Suzanne M. Gorman, senior assistant attorney general, orally), for the State.


Howard Gross, of Dover, on the brief and orally, for the respondent.


BASSETT, J.  The respondent, the father of G.G., appeals the order of the Superior Court (Delker, J.), which, after de novo review, upheld a finding by the 10th Circuit Court – Portsmouth Family Division that the respondent had abused and neglected G.G.  See RSA 169-C:21, 28 (2002).  The respondent contests the superior court's denial of his request to cross-examine or subpoena G.G. after the court admitted her videotaped interview into evidence. We affirm in part, vacate in part, and remand.

The facts underlying the respondent's abuse and neglect of G.G. are not at issue in this appeal.  Accordingly, we need not recite them.  The relevant procedural facts are as follows.  At the superior court adjudicatory hearing, the petitioner, the New Hampshire Division for Children, Youth and Families (DCYF), sought to introduce into evidence a videotaped recording of an

interview of G.G. by a Child Advocacy Center worker. The respondent's attorney objected to the recording's introduction without G.G. testifying at the hearing. He argued that he had "a black-and-white statutory right to cross-examine her." See RSA 169-C:18, III (Supp. 2013). He also argued that, because G.G.'s presence at the hearing was required for his defense, he had a statutory right to subpoena her. See RSA 169-C:11 (2002).

The State disagreed, arguing that requiring G.G. to testify was contrary to the purpose of the Child Protection Act, which is to protect the child. See RSA ch. 169-C (2002 & Supp. 2013). The State informed the court that G.G.'s therapist had raised "concerns about the child testifying," and argued: "[I]t's nothing more than an opportunity to depose this witness because she's going to have to testify in a criminal case." The State stated that if the court determined that G.G.'s presence was required and that a subpoena should issue, see RSA 169-C:11, the State would move to quash it and "bring in a therapist to say why it will be detrimental to this particular child to testify in this particular proceeding."

The trial court deferred ruling on the matter until it reviewed the video to determine whether it was "reliable, . . . trustworthy, and otherwise admissible." Cf. RSA 516:25-a (2007) ("In all civil actions, suits or proceedings to recover damages on behalf of a minor child for abuse or assault, including sexual abuse or sexual assault, any statement of the minor child alleged to have been the victim of such abuse or assault shall not be excluded as hearsay, provided that the trial judge, prior to the admission of such testimony, shall make findings of fact that the statement sought to be admitted is apparently trustworthy and that the witness seeking to testify to such statement is competent."). After reviewing the video, the court decided that the State could "introduce [the recorded] interview without having to call [G.G.] to testify" and that the respondent had no "right to subpoena [G.G] to testify about these events."

The court rejected the respondent's assertion that he had "an absolute right to subpoena [G.G.] and force her to testify." The court concluded that G.G. would be eligible for subpoena only if it determined that the respondent had "a compelling need" for her to be a witness at the proceeding or that her presence was otherwise "necessary or essential." The court decided that "the respondent's request to subpoena [G.G. was] not necessary for his defense" because: (1) he did not argue or demonstrate that G.G.'s testimony in the proceeding would contradict what she said in the recorded interview; (2) he did not identify any areas of cross-examination that he intended to pursue through G.G. that he could not explore during the testimony of the DCYF worker through whom the interview was admitted; and (3) the recorded interview was "largely cumulative" of the disclosures G.G. made to her guidance counselor and mother. The court concluded that subpoenaing G.G., "an eleven year old

child," would only subject her "to the drama of testifying in a proceeding which is designed to protect her best interests."

Resolving the issues in this appeal requires that we engage in statutory interpretation. Our review of the superior court's decision, therefore, is de novo. In re Cierra L., 161 N.H. 185, 188 (2010). In matters of statutory interpretation, we are the final arbiter of the intent of the legislature as expressed in the words of the statute considered as a whole. Petition of Carrier, 165 N.H. ___, ___, 82 A.3d 917, 920 (2013). We first look to the language of the statute itself, and, if possible, construe that language according to its plain and ordinary meaning. Id. at ___, 82 A.3d at 920. We interpret legislative intent from the statute as written and will not consider what the legislature might have said or add language that the legislature did not see fit to include. Id. at ___, 82 A.3d at 920. We construe all parts of a statute together to effectuate its overall purpose and avoid an absurd or unjust result. Id. at ___, 82 A.3d at 920. Moreover, we do not consider words and phrases in isolation, but rather within the context of the statute as a whole. Id. at ___, 82 A.3d at 920. This enables us to better discern the legislature's intent and to interpret statutory language in light of the policy or purpose sought to be advanced by the statutory scheme. Id. at ___, 82 A.3d at 920.

The statutes pertinent to this case are RSA 169-C:18, III, RSA 169-C:12 (2002), and RSA 169-C:11. RSA 169-C:18, III provides, in pertinent part:

> The petitioner shall present witnesses to testify in support of the petition and any other evidence necessary to support the petition. The petitionees shall have the right to present evidence and witnesses on their own behalf and to cross-examine adverse witnesses. The admissibility of all evidence in this hearing shall be determined by RSA 169-C:12.

RSA 169-C:12 provides that "[i]n any hearing under [RSA chapter 169-C], the court shall not be bound by the technical rules of evidence and may admit evidence which it considers relevant and material." RSA 169-C:11 provides, in pertinent part:

> A subpoena may be issued pursuant to RSA 516, or upon application of a party to the proceedings, or upon the motion of the court. The court may issue subpoenas requiring . . . the attendance of any person whose presence is required by the child, his parents or guardian or any other person whose presence, in the opinion of the court, is necessary.

The respondent argues that those statutes confer upon him an "absolute right to call witnesses on his own behalf." He contends that the pertinent

statutes neither "limit [n]or exempt the child from testifying in cases of abuse or neglect." He further argues that, in this particular case, G.G. "is the only one – according to the hearsay testimony taken – who has direct knowledge of the alleged assault." Her testimony, he contends, is thus, relevant, material, and admissible under RSA 169-C:12. Accordingly, he argues, the superior court erred when it refused to allow him to compel G.G.'s testimony.

We disagree with the respondent to the extent that he contends that RSA 169-C:12 constitutes the only limitation upon an accused parent's ability to present witnesses on his own behalf. The structure of the statutory scheme establishes that whatever right an accused parent may have under RSA 169-C:18, III to "present evidence and witnesses on [his] own behalf and to cross-examine adverse witnesses" is qualified, not only by RSA 169-C:12, but also by RSA 169-C:11 and the court's inherent authority to control its own proceedings. With regard to the right to compel the presence of a witness at the proceeding, RSA 169-C:11 expressly allows the court to consider whether that witness's presence "is required by the child, his parents or guardian." Moreover, "[t]he trial court has inherent power to control every aspect of the proceeding before it." State v. Fecteau, 140 N.H. 498, 504 (1995). "For this reason, a trial judge has the authority to determine the manner and procedure by which a case will be tried, except where limited by statute, court rule, or constitutional fiat." Id. (quotation omitted). The statutes pertinent to this appeal do not abrogate that inherent authority. Thus, we reject the assertion that the trial court, in this case, had no discretion to decide whether to allow the respondent to call G.G. as a witness even though her testimony would have been both relevant and material.

The respondent's interpretation would lead to an illogical result, particularly when applied to the child who is the subject of an abuse and neglect proceeding. Such a child necessarily will always have "relevant and material" information. Construing the pertinent statutes as does the respondent would allow an accused parent to compel the testimony of the child in every abuse and neglect proceeding. That would be contrary to the primary purpose of the Child Protection Act, which is to "provide protection to children whose life, health or welfare is endangered." RSA 169-C:2, I(a) (2002); see In re Shelby R., 148 N.H. 237, 241 (2002) ("the Act's primary interest is protecting children, which often trumps other competing goals of the Act"), overruled on other grounds by In re C.M., 163 N.H. 768 (2012); In the Matter of Jeffrey G. & Janette P., 153 N.H. 200, 204 (2006) ("Under [the Child Protection Act], the welfare of an allegedly abused or neglected child is of paramount importance.")

Therefore, we conclude that given the plain language of the pertinent statutes and the court's inherent authority to control the proceedings before it, trial courts have the discretion in abuse and neglect proceedings to determine whether any witness, including the child, should be compelled to testify.

4

Consequently, to the extent that the trial court decided that the respondent did not have an "absolute right" to subpoena G.G., even though her testimony would have been relevant and material, the trial court did not err.

Although the respondent asserts constitutional claims, he has not sufficiently developed his constitutional arguments for our review. Accordingly, we do not address them. See State v. Chick, 141 N.H. 503, 504 (1996) (declining to address constitutional argument based upon "passing reference to 'due process'").

Because compelling the testimony of a child who is the subject of an abuse and neglect proceeding presents unique issues, in the exercise of our supervisory authority, we set forth the following non-exhaustive list of factors for courts to consider when deciding whether to compel such testimony. See N.H. CONST. pt. II, art. 73-a. In those circumstances, we encourage trial courts to consider: (1) the child's age; (2) the specific potential harm to the child from testifying; (3) the indicia of reliability surrounding any admitted out-of-court statements describing the child's allegations; (4) evidence that may lend credibility to the allegations of abuse or neglect, such as consistency of the child's and responding parent's accounts, or evidence of prior injury; (5) the incremental probative value of the child's potential in-court testimony; and (6) whether there are alternatives to in-court testimony that would enable meaningful examination of the child without jeopardizing the child's well-being, see Maryland v. Craig, 497 U.S. 836, 855 (1990) (noting that special procedures for child testimony in criminal abuse proceedings may be appropriate).

Although we encourage trial courts to consider these enumerated factors, we stress that our list is not exhaustive and that trial courts are not required to consider all of the factors or to give them equal weight. We also encourage trial courts to make express findings of fact with regard to the factors upon which they rely so as to facilitate appellate review. See In the Matter of Rupa & Rupa, 161 N.H. 311, 318 (2010) (regarding factors to determine award of grandparent visitation).

The concurrence expresses concern that by listing factors for the court to consider when deciding whether to compel the child's testimony, we are suggesting that a respondent must make a threshold showing that examination of the child will, to some degree, challenge the child's credibility. That concern is unwarranted. Given the nature of the respondent's position here – that he has an absolute right to examine the child – as well as the state of the record, we decline to now decide whether the respondent bears such a burden or whether any presumption should apply.

Although we agree with the trial court that relevance and materiality are not the only limits on the respondent's right to compel the testimony of the child, the record is unclear as to whether the trial court adequately considered the competing interests of the respondent and the child. Of course, neither did the trial court have the benefit of the non-exhaustive list of factors enumerated above. Accordingly, we vacate its decision and remand for further proceedings consistent with this opinion. When the court is considering whether to compel G.G. to testify in this case, the court may wish to consider whether she testified at the respondent's criminal trial and, if so, whether her testimony in the criminal proceeding would suffice for the instant proceeding.

<u>Affirmed in part; vacated in part; and remanded</u>.

DALIANIS, C.J., and HICKS, and CONBOY, JJ., concurred; LYNN, J., concurred specially.

LYNN, J., concurring specially. I agree in large measure with the majority opinion, but write separately because I have a narrower view than does the majority as to when a trial court may sustainably exercise its discretion to deny a person accused of abuse or neglect the right to call the child who is the subject of the alleged abuse or neglect as a witness at the adjudicatory hearing.

At the outset, I believe it important to emphasize the points on which I am in complete agreement with the majority. First, I agree that RSA 169-C:12 (2002) permits the petitioner to introduce reliable hearsay evidence, including statements of the allegedly abused child such as those contained in the videotaped interview of G.G., and that doing so does not make the declarants "adverse witnesses" whom the respondent is entitled to cross-examine under RSA 169-C:18, III (Supp. 2013). Second, I also agree that RSA 169-C:18, III does not give the respondent – or any other party for that matter – an "absolute right" to call any witness he chooses; both RSA 169-C:11 (2002) and the court's inherent authority to control the proceeding before it grant the court some measure of discretion to determine whether a party has a legitimate reason to call a particular witness. To cite an obvious example, if a party can establish fact "X" through the testimony of one witness, then, absent highly unusual circumstances, the court can sustainably exercise its discretion to determine that calling ten witnesses to establish this same fact is unnecessarily cumulative and/or a waste of time even though each witness has information that is relevant and material. Cf. <u>N.H. R. Ev.</u> 403.

6

I am also in basic agreement with the non-exclusive list of factors the court encourages trial courts to consider in determining whether to permit a respondent to call an alleged child victim as a witness in the respondent's case at the adjudicatory hearing. However, I am troubled by the implications of the majority opinion insofar as it can be interpreted to suggest that the trial court can decline to permit the respondent to call the alleged child victim for the purpose of challenging his or her credibility unless the respondent can make some kind of threshold showing that doing so will be productive. In my view, given the terms of RSA 169-C:18, III, it would constitute an unsustainable exercise of discretion for a court to require any such threshold showing if there is (1) any legitimate question concerning the child's credibility or the validity of the allegations[1] and (2) the respondent has had no prior opportunity to test the child's credibility, unless (3) a specific showing is made by the petitioner of likely concrete harm to the child that would result from being required to testify that cannot otherwise be ameliorated by the court.[2] Only when such a showing is made would I then permit the court to balance the harm against the likely benefit to the respondent from obtaining the child's testimony. Cf. In re Tayler F., 995 A.2d 611, 626, 628 (Conn. 2010) (holding that court's determination that child is "unavailable" to testify in a neglect proceeding so as to allow admission of child's out-of-court statements under residual hearsay exception "must be based . . . on evidence specific to the child and the circumstances, not a generalized presumption that testifying is per se harmful," and that the court must find that the child will suffer "serious emotional or mental harm" if forced to testify; and "emphasiz[ing] that a finding that it is not in the best interest of the child to testify is not equivalent to psychological harm"); see also id. at 626 n.9 (noting that expert opinion is

---

[1] In determining whether there is a legitimate question as to the child's credibility that may warrant permitting the respondent to call the child as a witness, a significant factor for the court to consider is whether the respondent has offered testimony at the hearing or elsewhere that refutes the allegations of abuse or neglect. The absence of testimony by an accused parent in the RSA chapter 169-C proceeding is particularly significant on this point, since RSA 169-C:12-a (2002) makes testimony given by the parent in such proceedings inadmissible in criminal proceedings related to the alleged abuse or neglect. This statute provides additional impetus for the rule that permits the fact finder to draw an adverse inference against a litigant in a civil proceeding who chooses not to testify based on the exercise of the privilege against self-incrimination. See N.H. R. Ev. 512(d); see also In re Quinn, 763 N.E.2d 573, 578 (Mass. App. Ct. 2002).

[2] Among the actions the trial court may take to ameliorate the impact on the child of being required to testify are the following: (1) prohibiting overly aggressive or overtly hostile questioning by respondent's counsel; (2) allowing the child's guardian (or, in appropriate circumstances, a non-accused parent) to be close to or to stand by the child while testifying; (3) ordering that the examination take place in the more informal setting of the judge's chambers rather than in the courtroom; (4) limiting the persons permitted to be present during the child's testimony, including, if the circumstances warrant, precluding the respondent from being present during the time the child testifies; and (5) having the parties submit written questions, which the judge can then ask the child in chambers with a record but without the parties present, after which the judge shares the child's answers with the parties.

divided on question of whether it is per se harmful for alleged child abuse victims to testify).  I recognize that protection of children is the primary purpose of RSA chapter 169-C.  However, the statute also establishes an adversary process, albeit a relaxed one, as the basis through which the determination of whether a child has been abused or neglected is to be established, and the State quite obviously has <u>no</u> legitimate interest in protecting a child from the exposure of false or inaccurate claims of abuse or neglect.

What I find particularly troubling here is the State's representation to the trial court of its "concerns" about having the child testify in this case, when in the next breath it announced that the child would be testifying in the related criminal case against the respondent.  Apparently, any "concerns" of harm to the child that might result from her testifying in this closed-to-the-public abuse and neglect proceeding are not of sufficient magnitude to prevent her from testifying in a presumably much more contentious, open-to-the-public felony criminal trial before a jury.  Perhaps there is a meritorious explanation for this seeming contradiction, but if so, it is not obvious from the record before us.  While in some circumstances one possible explanation might be that the danger of harm to the child increases if she is required to testify on multiple occasions – <u>i.e.</u>, in both this abuse and neglect case and at the criminal trial – the record here raises a serious question as to whether there was any legitimate need for the State to move forward with this case prior to the criminal trial.  The record indicates that the child resides with her mother, who is not accused of any wrongdoing, and that a condition of the respondent's bail in the criminal case is that he have no contact with the child.  Given these circumstances, one might reasonably ask why the rush to proceed with this case before the criminal case went to trial.  <u>Compare</u> <u>In re Quinn</u>, 763 N.E.2d at 576-77 & n.4 (child's mother also had been adjudged unfit parent and superior court refused to proceed with criminal case until care and protection proceeding concluded).  Had the State chosen to wait, and had the child testified at the criminal trial and been subject to cross-examination, the transcript of the same could have been provided to the judge in this case and – as the majority seems to recognize – would have sufficed to address any possible concern about insuring that the respondent had the opportunity to test the child's credibility.

Despite my unease for the reasons stated in the preceding paragraph, because the record is unclear as to whether the respondent testified in this case, and therefore whether there was a legitimate question as to the child's credibility, I concur with the majority's decision to remand this case to the trial court for reconsideration in light of the factors it identifies, including any testimony given by the child at the criminal trial.