Bassett, J.
The respondent, the father of G.G., appeals the order of the Superior Court (Delker, J.), which, after de novo review, upheld a finding by the 10th Circuit Court — Portsmouth Family Division that the respondent had abused and neglected G.G. See RSA 169-C:21, 28 (2002). The respondent contests the superior court’s denial of his request to cross-examine or subpoena G.G. after the court admitted her videotaped interview into evidence. We affirm in part, vacate in part, and remand.
The facts underlying the respondent’s abuse and neglect of G.G. are not at issue in this appeal. Accordingly, we need not recite them. The relevant procedural facts are as follows. At the superior court adjudicatory hearing, the petitioner, the New Hampshire Division for Children, Youth and Families (DCYF), sought to introduce into evidence a videotaped recording of an interview of G.G. by a Child Advocacy Center worker. The respondent’s attorney objected to the recording’s introduction without G.G. testifying at the hearing. He argued that he had “a black-and-white statutory right to cross-examine her.” See RSA 169-C:18, III (Supp. 2013). He also argued that, because G.G.’s presence at the hearing was required for his defense, he had a statutory right to subpoena her. See RSA 169-C:11 (2002).
The State disagreed, arguing that requiring G.G. to testify was contrary to the purpose of the Child Protection Act, which is to protect the child. See RSA ch. 169-C (2002 & Supp. 2013). The State informed the court that G.G.’s therapist had raised “concerns about the child testifying,” and argued: “[I]t’s nothing more than an opportunity to depose this witness because she’s going to have to testify in a criminal case.” The State stated that if the court determined that G.G.’s presence was required and that a subpoena should issue, see RSA 169-C:11, the State would move to quash it and “bring in a therapist to say why it will be detrimental to this particular child to testify in this particular proceeding.”
*195 The trial court deferred ruling on the matter until it reviewed the video to determine whether it was “reliable, . . . trustworthy, and otherwise admissible.” Cf RSA 516:25-a (2007) (“In all civil actions, suits or proceedings to recover damages on behalf of a minor child for abuse or assault, including sexual abuse or sexual assault, any statement of the minor child alleged to have been the victim of such abuse or assault shall not be excluded as hearsay, provided that the trial judge, prior to the admission of such testimony, shall make findings of fact that the statement sought to be admitted is apparently trustworthy and that the witness seeking to testify to such statement is competent.”). After reviewing the video, the court decided that the State could “introduce [the recorded] interview without having to call [G.G.] to testify” and that the respondent had no “right to subpoena [G.G] to testify about these events.”
The court rejected the respondent’s assertion that he had “an absolute right to subpoena [G.G.] and force her to testify.” The court concluded that G.G. would be eligible for subpoena only if it determined that the respondent had “a compelling need” for her to be a witness at the proceeding or that her presence was otherwise • “necessary or essential.” The court decided that “the respondent’s request to subpoena [G.G. was] not necessary for his defense” because: (1) he did not argue or demonstrate that G.G.’s testimony in the proceeding would contradict what she said in the recorded interview; (2) he did not identify any areas of cross-examination that he intended to pursue through G.G. that he could not explore during the testimony of the DCYF worker through whom the interview was admitted; and (3) the recorded interview was “largely cumulative” of the disclosures G.G. made to her guidance counselor and mother. The court concluded that subpoenaing G.G., “an eleven year old child,” would only subject her “to the drama of testifying in a proceeding which is designed to protect her best interests.”
Resolving the issues in this appeal requires that we engage in statutory interpretation. Our review of the superior court’s decision, therefore, is de novo. In re Cierra L., 161 N.H. 185, 188 (2010). In matters of statutory interpretation, we are the final arbiter of the intent of the legislature as expressed in the words of the statute considered as a whole. Petition of Carrier, 165 N.H. 719, 721 (2013). We first look to the language of the statute itself, and, if possible, construe that language according to its plain and ordinary meaning. Id. We interpret legislative intent from the statute as written and will not consider what the legislature might have said or add language that the legislature did not see fit to include. Id. We construe all parts of a statute together to effectuate its overall purpose and avoid an absurd or unjust result. Id. Moreover, we do not consider words and phrases in isolation, but rather within the context of the statute as a whole. *196 Id. This enables us to better discern the legislature’s intent and to interpret statutory language in light of the policy or purpose sought to be advanced by the statutory scheme. Id.
The statutes pertinent to this case are RSA 169-C:18, III, RSA 169-C:12 (2002), and RSA 169-C:11. RSA 169-C:18, III provides, in pertinent part:
The petitioner shall present witnesses to testify in support of the petition and any other evidence necessary to support the petition. The petitionees shall have the right to present evidence and witnesses on their own behalf and to cross-examine adverse witnesses. The admissibility of all evidence in this hearing shall be determined by RSA 169-C:12!
RSA 169-C:12 provides that “[i]n any hearing under [RSA chapter 169-C], the court shall not be bound by the technical rules of evidence and may admit evidence which it considers relevant and material.” RSA 169-C:11 provides, in pertinent part:
A subpoena may be issued pursuant to RSA 516, or upon application of a party to the proceedings, or upon the motion of the court. The court may issue subpoenas requiring . . . the attendance of any person whose presence is required by the child, his parents or guardian or any other person whose presence, in the opinion of the court, is necessary.
The respondent argues that those statutes confer upon him an “absolute right to call witnesses on his own behalf.” He contends that the pertinent statutes neither “limit [n]or exempt the child from testifying in cases of abuse or neglect.” He further argues that, in this particular case, G.G. “is the only one — according to the hearsay testimony taken — who has direct knowledge of the alleged assault.” Her testimony, he contends, is thus, relevant, material, and admissible under RSA 169-C:12. Accordingly, he argues, the superior court erred when it refused to allow him to compel G.G.’s testimony.
We disagree with the respondent to the extent that he contends that RSA 169-C:12 constitutes the only limitation upon an accused parént’s ability to present witnesses on his own behalf. The structure of the statutory scheme establishes that whatever right an accused parent may have under RSA 169-C:18, III to “present evidence and witnesses on [his] own behalf and to cross-examine adverse witnesses” is qualified, not only by RSA 169-C:12, but also by RSA 169-C:11 and the court’s inherent authority to control its own proceedings. With regard to the right to compel the presence of a witness at the proceeding, RSA 169-C:11 expressly allows the *197 court to consider whether that witness’s presence “is required by the child, his parents or guardian.” Moreover, “[t]he trial court has inherent power to control every aspect of the proceeding before it.” State v. Fecteau, 140 N.H. 498, 504 (1995). “For this reason, a trial judge has the authority to determine the manner and procedure by which a case will be tried, except where limited by statute, court rule, or constitutional fiat.” Id. (quotation omitted). The statutes pertinent to this appeal do not abrogate that inherent authority. Thus, we reject the assertion that the trial court, in this case, had no discretion to decide whether to allow the respondent to call G.G. as a witness even though her testimony would have been both relevant and material.
The respondent’s interpretation would lead to an illogical result, particularly when applied to the child who is the subject of an abuse and neglect proceeding. Such a child necessarily will always have “relevant and material” information. Construing the pertinent statutes as does the respondent would allow an accused parent to compel the testimony of the child in every abuse and neglect proceeding. That would be contrary to the primary purpose of the Child Protection Act, which is to “provide protection to children whose life, health or welfare is endangered.” RSA 169-C:2, 1(a) (2002); see In re Shelby R., 148 N.H. 237, 241 (2002) (“the Act’s primary interest is protecting children, which often trumps other competing goals of the Act”), overruled on other grounds by In re C.M., 163 N.H. 768 (2012); In the Matter of Jeffrey G. & Janette P., 153 N.H. 200, 204 (2006) (“Under [the Child Protection Act], the welfare of an allegedly abused or neglected child is of paramount importance.”)
Therefore, we conclude that given the plain language of the pertinent statutes and the court’s inherent authority to control the proceedings before it, trial courts have the discretion in abuse and neglect proceedings to determine whether any witness, including the child, should be compelled to testify. Consequently, to the extent that the trial court decided that the respondent did not have an “absolute right” to subpoena G.G., even though her testimony would have been relevant and material, the trial court did not err.
Although the respondent asserts constitutional claims, he has not sufficiently developed his constitutional arguments for our review. Accordingly, we do not address them. See State v. Chick, 141 N.H. 503, 504 (1996) (declining to address constitutional argument based upon “passing reference to ‘due process’ ”).
Because compelling the testimony of a child who is the subject of an abuse and neglect proceeding presents unique issues, in the exercise of our supervisory authority, we set forth the following non-exhaustive list of *198 factors for courts to consider when deciding whether to compel such testimony. See N.H. CONST, pt. II, art. 73-a. In those circumstances, we encourage trial courts to consider: (1) the child’s age; (2) the specific potential harm to the child from testifying; (3) the indicia of reliability surrounding any admitted out-of-court statements describing the child’s allegations; (4) evidence that may lend credibility to the allegations of abuse or neglect, such as consistency of the child’s and responding parent’s accounts, or evidence of prior injury; (5) the incremental probative value of the child’s potential in-court testimony; and (6) whether there are alternatives to in-court testimony that would enable meaningful examination of the child without jeopardizing the child’s well-being, see Maryland v. Craig, 497 U.S. 836, 855 (1990) (noting that special procedures for child testimony in criminal abuse proceedings may be appropriate).
Although we encourage trial courts to consider these enumerated factors, we stress that our list is not exhaustive and that trial courts are not required to consider all of the factors or to give them equal weight. We also encourage trial courts to make express findings of fact with regard to the factors upon which they rely so as to facilitate appellate review. See In the Matter of Rupa & Rupa, 161 N.H. 311, 318 (2010) (regarding factors to determine award of grandparent visitation).
The concurrence expresses concern that by listing factors for the court to consider when deciding whether to compel the child’s testimony, we are suggesting that a respondent must make a threshold showing that examination of the child will, to some degree, challenge the child’s credibility. That concern is unwarranted. Given the nature of the respondent’s position here — that he has an absolute right to examine the child — as well as the state of the record, we decline to now decide whether the respondent bears such a burden or whether any presumption should apply.
Although we agree with the trial court that relevance and materiality are not the only limits on the respondent’s right to compel the testimony of the child, the record is unclear as to whether the trial court adequately considered the competing interests of the respondent and the child. Of course, neither did the trial court have the benefit of the non-exhaustive list of factors enumerated above. Accordingly, we vacate its decision and remand for further proceedings consistent with this opinion. When the court is considering whether to compel G.G. to testify in this case, the court may wish to consider whether she testified at the respondent’s criminal trial and, if so, whether her testimony in the criminal proceeding would suffice for the instant proceeding.

Affirmed in part; vacated in part; and remanded.

*199 DALIANIS, C.J., and HICKS, and CONBOY, JJ., concurred; Lynn, J., concurred specially.