NOTICE: This opinion is subject to motions for rehearing under Rule 22 as well as formal revision before publication in the New Hampshire Reports. Readers are requested to notify the Reporter, Supreme Court of New Hampshire, One Charles Doe Drive, Concord, New Hampshire 03301, of any editorial errors in order that corrections may be made before the opinion goes to press. Errors may be reported by email at the following address: reporter@courts.state.nh.us. Opinions are available on the Internet by 9:00 a.m. on the morning of their release. The direct address of the court's home page is: https://www.courts.nh.gov/our-courts/supreme-court

THE SUPREME COURT OF NEW HAMPSHIRE

_____

Hillsborough-southern judicial district
No. 2021-0478

CASSANDRA CARON & a.

v.

NEW HAMPSHIRE DEPARTMENT OF EMPLOYMENT SECURITY & a.

Argued: May 4, 2022
Opinion Issued: December 7, 2022

Perez Law, of Medford, Massachusetts (Michael Perez on the brief and orally), for the plaintiffs.

John M. Formella, attorney general, and Anthony J. Galdieri, solicitor general (Nathan W. Kenison-Marvin, assistant attorney general, on the brief and orally), for the defendants.

BASSETT, J. The plaintiffs, Cassandra Caron, Brandon Deane, Alison Petrowski, and Aaron Shelton, appeal an order of the Superior Court (Colburn, J.) denying their request for a temporary restraining order and preliminary injunctive relief and dismissing their complaint. In the trial court, the plaintiffs sought, pursuant to RSA 282-A:127 (2010), to require the defendants, the New Hampshire Department of Employment Security (NHES) and its Commissioner,

to reinstate Pandemic Unemployment Assistance available under the Coronavirus Aid, Relief, and Economic Security (CARES) Act, see Coronavirus Aid, Relief, and Economic Security Act, Pub. L. No. 116-136, § 2102, 134 Stat. 281, 313 (2020) (codified as amended at 15 U.S.C. § 9021 (amended 2021)). On appeal, they argue that the court erred when it construed RSA 282-A:127 as imposing no obligation on the defendants to secure Pandemic Unemployment Assistance for New Hampshire citizens and, therefore, dismissed the complaint for failure to state a claim. Because we agree with the trial court's interpretation of RSA 282-A:127, we affirm.

The record supports the following facts. In March 2020, in response to the COVID-19 pandemic, Congress enacted the CARES Act. See Coronavirus Aid, Relief, and Economic Security Act, Pub. L. No. 116-136, 134 Stat. 281 (2020) (codified as amended in scattered sections of U.S.C.). The CARES Act established, among other things, several temporary unemployment benefit programs, see 15 U.S.C. §§ 9021-9032, including Pandemic Unemployment Assistance (PUA), id. § 9021. PUA provided unemployment compensation to individuals who were otherwise able and available for work and who were either unemployed for a COVID-19 related reason, or "self-employed, . . . seeking part-time employment, [did] not have sufficient work history, or otherwise would not qualify for regular unemployment or extended benefits under State or Federal law." Id. § 9021(a)(3)(A)(ii), (b). Congress made these benefits available for periods of unemployment that occurred between January 27, 2020 and September 6, 2021. Id. § 9021(c)(1)(A)(i); American Rescue Plan Act of 2021, Pub. L. No. 117-2, sec. 9011(a), § 9021(c)(1)(A)(ii), 135 Stat. 4, 118 (2021) (amending 15 U.S.C. § 9021(c)).

The CARES Act required the Secretary of the United States Department of Labor to provide PUA benefits to eligible individuals "through agreements with States which, in the judgment of the Secretary, have an adequate system for administering such assistance through existing State agencies." 15 U.S.C. § 9021(f)(1). Once a state entered into an agreement with the Secretary to administer PUA, the federal government funded the entire program — the cost of the assistance provided to individuals as well as the cost of administrative expenses incurred by the state. See id. § 9021(f)(2).

On March 28, 2020, the Governor signed an agreement with the Department of Labor, committing to administer PUA to New Hampshire citizens. The agreement provided that either party could terminate it "on thirty days' written notice." NHES thereafter distributed PUA to eligible individuals, including the plaintiffs, for over a year. In May 2021, however, the Governor provided the Secretary of the Department of Labor thirty days' notice that New Hampshire would be terminating its administration of PUA prior to expiration of funding for the program. That termination became effective June 19, 2021. Consequently, the plaintiffs received no PUA benefits between that date and September 6, 2021, when federal funding for the program expired.

In August 2021, the plaintiffs filed this action seeking a declaratory judgment that the defendants had violated RSA 282-A:127 by "terminating and failing to provide PUA benefits to covered individuals in New Hampshire through September 6, 2021," and requesting a writ of mandamus compelling the defendants to reinstate PUA. Relying on RSA 282-A:127, they also moved for a temporary restraining order and preliminary injunction ordering NHES to reinstate PUA, including any back benefits. RSA 282-A:127, entitled "State-Federal Cooperation," provides, in relevant part:

> In the administration of this chapter, the commissioner of the department of employment security shall cooperate to the fullest extent consistent with the provisions of this chapter, with the United States Department of Labor, and is authorized and directed to take such action, through the adoption of appropriate rules, the adoption of administrative methods and standards, as may be necessary to secure to this state and its citizens all advantages available under the provisions of the Social Security Act, under the provisions of section 3302 of the Federal Unemployment Tax Act and under the provisions of the Wagner-Peyser Act approved June 6, 1933, as amended . . . .

RSA 282-A:127, I. The plaintiffs argued that "PUA is one of the many [unemployment insurance] programs provided 'under' the Social Security Act," and, given the mandatory language of the statute, the defendants were obligated to administer PUA to the fullest extent possible to fulfill the statutory directive to "secure to this state and its citizens all advantages available under" the Social Security Act. (Quotation omitted.) The defendants objected.

Following a hearing, the court denied the plaintiffs' request for a temporary restraining order or preliminary injunction because it determined that they had not shown that they were likely to succeed on the merits of their claim that the defendants had violated RSA 282-A:127. See N.H. Dep't of Envtl. Servs. v. Mottolo, 155 N.H. 57, 63 (2007) (stating that a party seeking an injunction must demonstrate, among other things, that "it would likely succeed on the merits"). The court rejected the premise that PUA is an advantage "available under the provisions of the Social Security Act," RSA 282-A:127, I, reasoning that PUA was created by, and codified as part of, the CARES Act, not the Social Security Act. It concluded that RSA 282-A:127 "ha[d] no application to PUA benefits," and, therefore, "neither [the Commissioner] nor [NHES] ha[d] a legal obligation to secure" or administer PUA.

In addition, the court sua sponte dismissed the plaintiffs' complaint. The trial court reasoned that the plaintiffs' claims rested on a flawed interpretation of RSA 282-A:127, and, therefore, failed to state a claim upon which relief may be granted. The record before us does not indicate that the plaintiffs sought reconsideration or otherwise objected to this procedure. This appeal followed.

On appeal, the plaintiffs argue that the trial court erred when it concluded that PUA was not an advantage "available under the provisions of the Social Security Act." (Quoting RSA 282-A:127, I.) The defendants counter that the trial court's construction of the statute was correct. The parties' dispute therefore centers on whether PUA was an advantage "available under the provisions of the Social Security Act." RSA 282-A:127, I. We agree with the defendants that it was not.

Resolution of this issue requires us to interpret RSA 282-A:127, I, which presents a question of law that we review de novo. See Appeal of Mullen, 169 N.H. 392, 402 (2016). When interpreting statutory language, we first look to the language of the statute itself, and, where possible, construe that language according to its plain and ordinary meaning. See id. We examine the words and phrases not in isolation, but, rather, within the context of the statute as a whole. Petition of Carrier, 165 N.H. 719, 721 (2013). In doing so, we discern legislative intent from the statute as written. Id. We will neither ignore the plain language of the statute nor add words that the lawmakers did not see fit to include. Colburn v. Saykaly, 173 N.H. 162, 164-65 (2020). We construe all parts of the statute together to effectuate its overall purpose and avoid an absurd or unjust result. Carrier, 165 N.H. at 721.

The plain meaning of "available" is "that [which] is accessible or may be obtained," and the meaning of "under" in this context is "within the grouping or designation of." Webster's Third New International Dictionary 150, 2487 (unabridged ed. 2002). "[P]rovision," when used in reference to a statute, means "a clause in" that statute. Id. at 1827. Considering the meaning of these words together and in the context of RSA 282-A:127, we construe "available under the provisions of the Social Security Act" to mean that the advantage may be obtained "within the grouping" of clauses in the Social Security Act (SSA).

PUA did not fit this description. PUA was created by, and the funds necessary for its implementation were appropriated in, a provision of the CARES Act, 15 U.S.C. § 9021 — a statute entirely separate and apart from the SSA, see 42 U.S.C §§ 301-1397mm. In establishing PUA, Congress did not amend the SSA. Compare Pub. L. No. 116-136, § 2102, 134 Stat. at 313-17 (creating PUA without amending SSA), with Pub. L. No. 116-136, § 2103(b), 134 Stat. at 317-18 (separate provision of CARES Act amending provision of SSA to implement emergency unemployment relief for governmental entities and nonprofit organizations). Given this reality, we cannot conclude that PUA was obtainable by virtue of any provision of the SSA.

The plaintiffs argue to the contrary that PUA was "available under the provisions of the Social Security Act" because the funds for the program "come from and [were] processed through the provisions of the Social Security Act, specifically the Unemployment Trust Fund." They also argue that PUA was

"available under" the SSA because it was required to be <u>administered</u> in accordance with certain provisions of the SSA.  We are unpersuaded.

The funding for PUA did not "come from" the Unemployment Trust Fund; it was appropriated in the CARES Act from the general fund of the Treasury.  <u>See</u> 15 U.S.C. § 9021(g)(1)(B), (2)(B).  The funding did <u>pass through</u> the Unemployment Trust Fund, which was established by the SSA.  <u>See</u> 42 U.S.C. § 1104(a).  The CARES Act provides that the funding for PUA be transferred from the general fund of the Treasury into the Unemployment Trust Fund and that the Trust Fund "be used to make payments to States."  15 U.S.C. § 9021(g)(1)(A), (2)(A).  In so providing, the Act refers to the relevant provisions of the SSA that established the Unemployment Trust Fund and certain accounts within the Fund.  <u>See</u> <u>id</u>. (citing 42 U.S.C. §§ 1101, 1104, 1105).  The CARES Act merely capitalized on the pre-existing accounting system within the Unemployment Trust Fund as a means of transferring PUA funding to the states.  <u>See</u> <u>id</u>.  Similarly, to promptly respond to the economic emergency caused by the pandemic, the CARES Act incorporated the SSA's well-established administrative rules rather than create a new administrative system.  <u>See</u> <u>Unemployed Workers United v. Ducey</u>, 518 P.3d 293, 295 (Ariz. Ct. App. 2022) (explaining that, "[b]ecause [Congress] had no time to blaze a new administrative path" in response to the "unprecedented spike in the unemployment rate" caused by the pandemic, it "turned to the time-tested, well-worn 'Social Security infrastructure' and 'methods of administration'" to distribute unemployment benefits).  In short, the fact that PUA was administered using existing SSA systems and that PUA monies flowed through the SSA accounting system on their way to New Hampshire citizens does not mean that the benefits were <u>obtainable</u> from, or "available under," the SSA.

For all these reasons, we conclude that the trial court correctly interpreted the statutory language "advantages available under the provisions of the Social Security Act" as inapplicable to PUA.  We observe that we are not the only court to have reached this conclusion.  The South Carolina Supreme Court reached the same result when interpreting a South Carolina statute with language that is nearly identical to RSA 282-A:127.  <u>See</u> <u>Brannon v. McMaster</u>, 864 S.E.2d 548, 549-50 (S.C. 2021) (per curiam) (concluding that PUA is not an advantage "available under the provisions of the Social Security Act" (quotation and emphasis omitted)).  <u>But see</u> <u>State ex rel. Bowling v. DeWine</u>, No. 21AP-380, 2021 WL 3733205, at ¶37, ¶47 (Ohio Ct. App. 2021) (reaching opposite result under nearly identical statutory language), <u>dismissed as moot on appeal</u>, __ N.E.3d __, 2022 WL 17096861(Ohio 2022).  Other courts have reached the same conclusion that we do when interpreting analogous language in their respective state statutes.  <u>See</u> <u>Ducey</u>, 518 P.3d at 294-96; <u>Holcomb v. T.L.</u>, 175 N.E.3d 1177, 1181-84 (Ind. Ct. App. 2021).

The plaintiffs argue that our interpretation of RSA 282-A:127 "would lead to an absurd and unjust negation of [the defendants'] own authority" under the

statute. They first claim that our construction of the statute would mean that the defendants "did not have the authority to have secured [PUA] in the first place." We disagree. The plaintiffs' argument relies upon an unfounded factual premise: that the defendants secured PUA. In fact, the Governor, through his actions alone, secured PUA.

The plaintiffs next argue that our construction of the statute is absurd for two additional reasons: first, the defendants would not have had the authority, in the past, to secure crisis-related unemployment benefits available under two federal statutes that are not enumerated in RSA 282-A:127; and, second, in the future, they will not have the ability to secure funds available under new federal statutes unless the legislature adds those statutes to RSA 282-A:127. Again, we disagree. Simply because <u>the defendants</u> may not have the power to secure a particular federal unemployment benefit does not necessarily mean that New Hampshire will have to forgo federal funding. As evidenced by this case, the Governor — not the defendants — has secured federal unemployment benefits for New Hampshire in the past, and may do so again in the future. Alternatively, should new federal benefits not already within the scope of RSA 282-A:127, I, become available, by amending the statute, the legislature may authorize the defendants to secure those funds.

To be clear, our holding is not that the defendants have <u>no</u> authority to secure federal unemployment assistance funds, because, in fact, they do have such authority. <u>See, e.g.</u>, RSA 282-A:127, I (authorizing the Commissioner to secure advantages available under the provisions of the SSA and two other federal statutes); RSA 282-A:112, II (2010) (authorizing the Commissioner, "[f]or the purpose of . . . maintaining free public employment offices," to "enter into agreements with" and accept funding from federal agencies that administer unemployment compensation laws). Rather, we conclude only that RSA 282-A:127, I, did not require the defendants to secure the benefit at issue here — PUA — and that our construction of the statute does not lead to an absurd result.

In sum, we conclude that the trial court did not err when it determined that RSA 282-A:127 does not obligate the defendants to secure PUA for New Hampshire citizens for the entire federally-funded period. Accordingly, we affirm the trial court's dismissal of the complaint.

<u>Affirmed</u>.

MACDONALD, C.J., and HICKS, HANTZ MARCONI, and DONOVAN, JJ., concurred.