Merrimack
No. 2010-271

## STATE EMPLOYEES' ASSOCIATION OF NEW HAMPSHIRE *& a.*

### v.

## THE STATE OF NEW HAMPSHIRE *& a.*

Argued: February 16, 2011
Opinion Issued: April 14, 2011

*Molan Milner and Krupski, PLLC*, of Concord (*Glenn R. Milner* on the brief), and *Stember Feinstein Doyle Payne & Cordes, LLC*, of Pittsburgh, Pennsylvania (*William T. Payne & a.* on the brief, and *Stephen M. Pincus* orally), for the plaintiffs.

*Michael A. Delaney*, attorney general (*Danielle L. Pacik*, assistant attorney general, on the brief and orally), for defendant State of New Hampshire.

*Getman, Stacey, Schulthess & Steere, P.A.*, of Bedford (*Andrew R. Schulman* on the brief and orally), for defendants New Hampshire Retirement System and Dr. Lisa Shapiro.

*David R. Connell*, of Concord, on the brief, for the New Hampshire Local Government Center, as *amicus curiae*.

DUGGAN, J. The plaintiffs, the State Employees' Association of New Hampshire (SEA), SEIU, Local 1984 and four individual retired state employees, appeal an order of the Superior Court (*McNamara*, J.), denying their request to declare RSA 100-A:54, III (Supp. 2010) unconstitutional and granting summary judgment for the defendants, the State, the New Hampshire Retirement System (NHRS) and Dr. Lisa Shapiro, individually and in her capacity as chair of the NHRS Board of Trustees. We affirm.

The record supports the following facts. The State provides pensions to eligible retired state employees through the NHRS. Active state employees contribute to the NHRS through wage deductions. RSA 100-A:16, I(a) (Supp. 2010). Upon retirement, retirees receive a member annuity based upon their contributions and a state annuity determined in part by the member's "average final compensation." RSA 100-A:5, I(b) (2001). The funds held by the NHRS are to be used solely to pay the retirement allowances of NHRS members. *See* N.H. CONST. pt. I, art. 36-a.

The State also provides medical and surgical benefits to state employees and their spouses and dependents, and eligible retirees and their spouses through a separate program and statutory scheme. *See* RSA 21-I:30, I-II (Supp. 2009) (amended 2010); *see also State Employees Assoc. of N.H. v. N.H. Div. of Personnel*, 158 N.H. 338, 340 (2009). Eligible retirees include retired state law enforcement personnel (Group II), other retired state employees who meet certain eligibility criteria (Group I) and certain vested

deferred retirees. RSA 21-I:30, II, III (Supp. 2009) (amended 2010). The NHRS does not hold the funds used to pay for these benefits. Instead, the Employee and Retiree Benefit Risk Management Fund holds these funds, and they are administered by the department of administrative services (DAS). RSA 21-I:30-e (Supp. 2010).

Prior to 1992, the State paid the full health care premium for eligible retired state employees, subject to funding by the legislature. RSA 21-I:30 (Supp. 1990). In 1991, the legislature amended the statute to provide that "[t]he state shall pay a premium." RSA 21-I:30, I (Supp. 1991). Nonetheless, following this amendment, the State continued to pay the entire cost of the retirees' health care premium. However, in July 2009, the legislature enacted RSA 100-A:54, III, which provides in pertinent part:

> The retirement system shall deduct from the monthly retirement allowance of retired state employees under the age of 65 years receiving medical and surgical benefits provided pursuant to RSA 21-I:30, the premium contribution amounts of $65 per month for each such retiree and $65 per month for each applicable spouse; provided that the charge to each household shall not exceed $130 per month. Deducted amounts . . . shall be deposited in the employee and retiree benefit risk management fund. In the event the retiree's monthly allowance is insufficient to cover the certified contribution amount, the retirement system shall so notify the department of administrative services, which shall invoice and collect from the retiree the remaining contribution amount.

Shortly after the statute's enactment, the State distributed a notice to all retired state employees who received benefits pursuant to RSA 21-I:30, which stated:

> Effective July 1, 2009 legislation was enacted that requires State of New Hampshire retirees and their spouses . . . to make a monthly contribution toward the cost of their health care coverage.

> The law directs the New Hampshire Retirement System to deduct $65 per person each month from the retiree's pension account for each covered retiree and covered spouse.

> The New Hampshire Retirement System will begin taking premium contributions from pension benefits beginning July 31, 2009.

As of April 2009, an estimated 3,258 retired state employees and spouses under the age of sixty-five received health coverage. Of these retirees, only eight had a monthly allowance insufficient to cover the premium contribution.

In response to this statute's enactment, the plaintiffs brought a declaratory judgment action in superior court on behalf of themselves and those similarly situated against the State, the NHRS, and Shapiro. They sought a declaration that RSA 100-A:54, III is unconstitutional under the Contract Clauses of the New Hampshire and United States Constitutions and Part I, Article 36-a of the New Hampshire Constitution, and to permanently enjoin the NHRS from deducting the health care premiums from their pension benefits. The plaintiffs also filed a motion for class certification, upon which the trial court never ruled.

The parties subsequently filed cross-motions for summary judgment. The trial court granted the defendants' motions and denied the plaintiffs' motion. The court ruled that the plaintiffs have a vested contractual right to receive their full pensions and that RSA 100-A:54, III impairs that right. However, the court determined that the impairment is not substantial, and, accordingly, the impairment does not violate the Federal or State Contract Clauses. The court further found that RSA 100-A:54, III does not violate RSA 100-A:26-a (2001) or Part I, Article 36-a. This appeal followed.

On appeal, the plaintiffs assert that RSA 100-A:54, III violates both Part I, Article 23 and Part I, Article 36-a of the New Hampshire Constitution. They contend that it violates Part I, Article 23 because it impairs: (1) their vested right to receive the full amount of their pension benefits; and (2) their vested contractual rights conferred by RSA 100-A:26-a. They contend that it violates Part I, Article 36-a because it requires the NHRS to deduct funds that it was obligated to send to retirees and instead send them directly to the State to reduce the State's cost of providing medical insurance.

In reviewing the trial court's rulings on cross-motions for summary judgment, "we consider the evidence in the light most favorable to each party in its capacity as the nonmoving party and, if no genuine issue of material fact exists, we determine whether the moving party is entitled to judgment as a matter of law." *N.H. Assoc. of Counties v. State of N.H.,* 158 N.H. 284, 287-88 (2009) (quotation omitted). The sole issue on appeal is the constitutionality of RSA 100-A:54, III. We review the constitutionality of a statute *de novo. Id.* at 288. "The party challenging a statute's constitutionality bears the burden of proof." *Tuttle v. N.H. Med. Malpractice Joint Underwriting Assoc.,* 159 N.H. 627, 640 (2010) (quotation omitted).

■ "In reviewing a legislative act, we presume it to be constitutional and will not declare it invalid except upon inescapable grounds." *Baines v. N.H. Senate President,* 152 N.H. 124, 133 (2005) (quotation omitted). "In other words, we will not hold a statute to be unconstitutional unless a clear and substantial conflict exists between it and the constitution." *Id.* (quotation omitted). As such, a statute will not be construed to be unconstitutional when it is susceptible to a construction rendering it constitutional. *White v. Lee,* 124 N.H. 69, 77-78 (1983). "When doubts exist as to the constitutionality of a statute, those doubts must be resolved in favor of its constitutionality." *Bd. of Trustees, N.H. Judicial Ret. Plan v. Sec'y of State,* 161 N.H. 49, 53 (2010).

I

■ The plaintiffs first contend that RSA 100-A:54, III violates Part I, Article 23 of the New Hampshire Constitution, which provides: "Retrospective laws are highly injurious, oppressive, and unjust. No such laws, therefore, should be made . . . for the decision of civil causes . . . ." We have previously defined "retrospective law" as "every statute, which takes away or impairs vested rights, acquired under existing laws, or creates a new obligation, imposes a new duty, or attaches a new disability, in respect to transactions or considerations already past." *Opinion of the Justices (Furlough),* 135 N.H. 625, 630 (1992) (quotations omitted).

■ "Part I, Article 23 does not expressly reference existing contracts. However, we have held that its proscription duplicates the protections found in the contract clause of the United States Constitution." *Tuttle,* 159 N.H. at 640 (quotation omitted). Although our retrospective law provision provides greater protection than its federal counterpart, we have relied upon federal Contract Clause cases to resolve issues raised under Part I, Article 23 when contract impairment, and not simply retroactive application of a law, was alleged. *Id.* at 640-41. Accordingly, we understand Section 10 of the Federal Constitution and Part I, Article 23 of the State Constitution to afford equivalent protections where a law impairs a contract, or where a law abrogates an earlier statute that is itself a contract. *Id.* at 641. We will refer to their equivalent protections as the Federal and State Contract Clauses, respectively. *Id.*

■ We do not interpret the State Contract Clause "as an absolute bar on the impairment of either governmental or private contractual obligations." *Parker v. Wakelin,* 123 F.3d 1, 4 (1st Cir. 1997). Rather, there is no State Contract Clause violation unless it is first shown that a contract has been substantially altered. *Furlough,* 135 N.H. at 630-31. "This inquiry has three components: whether there is a contractual relationship, whether a change

in law impairs that contractual relationship, and whether the impairment is substantial." *Id.* at 631 (quotation omitted). If we determine that the legislation substantially impairs a contract, "a balancing of the police power and the rights protected by the contract clauses must be performed, and the law may pass constitutional muster only if it is reasonable and necessary to serve an important public purpose." *Tuttle,* 159 N.H. at 641 (quotation, brackets and ellipses omitted). We do not perform this analysis mechanically because no two cases are alike. *Id.* at 642. Our core task is to "strik[e] a balance between constitutionally protected contract rights and the State's legitimate exercise of its reserved police power." *Id.*

The plaintiffs contend, and the State concedes "for purposes of this case only," that the retirees have a vested right to certain retirement benefits, which are equivalent to contractual obligations. *See State Employees' Ass'n of N.H. v. Belknap County,* 122 N.H. 614, 621 (1982) ("[Retirement] benefits constitute a substantial part of an employee's compensation and become vested upon the commencement of permanent employee status."). Accordingly, we must resolve only whether RSA 100-A:54, III substantially impairs the retirees from receiving their full pension benefits.

The trial court determined that automatically deducting a retiree's healthcare premium from his retirement allowance impairs a retiree's right to receive the full amount of his retirement allowance, but that the impairment is not substantial. The State contests whether there is any impairment at all, but we find it unnecessary to resolve this issue because we agree with the trial court that any alleged impairment is not substantial.

The plaintiffs argue that the retirees' right to a pension in the amount specified by law became binding upon hire. Thus, they contend that RSA 100-A:54, III substantially impairs their rights to receive the full pension to which they are entitled because it diverts either $65 or $130 per month from the retirees' pensions into the State's coffers. They rely upon *Furlough* and several other cases that have held that payroll lags and mandatory furloughs substantially impair the employment contracts of state employees. *See, e.g., Univ. of Hawaii Professional Assembly v. Cayetano,* 183 F.3d 1096, 1106 (9th Cir. 1999); *Condell v. Bress,* 983 F.2d 415, 419 (2d Cir. 1993); *Ass'n of Surrogates v. State of N.Y.,* 940 F.2d 766, 772 (2d Cir. 1991); *Mass. Community College Council v. Com.,* 649 N.E.2d 708, 712 (Mass. 1995).

Unlike the cases relied upon by the plaintiffs, the State here has not in any way reduced its payment obligations to the retirees. For example, in *Furlough,* we considered a proposal by the legislature to require state employees to take unpaid leave. *Furlough,* 135 N.H. at 628-29. We determined that the proposal "impair[ed] the very heart of an employment contract: the promise of certain work for certain income. Its impact would

likely wreak havoc on the finances of many of the affected workers and can only be considered substantial." *Id.* at 634.

■ Here, unlike the salary reductions in the cases cited by the plaintiffs, RSA 100-A:54, III does not reduce the retirees' pension. Just as a payroll deduction for health insurance does not reduce an employee's contractually guaranteed salary, the automatic deduction of healthcare premiums does not decrease the retirees' pensions. The plaintiffs do not dispute the State's ability to charge the premium. Thus, regardless of whether the defendants deduct the statutorily authorized healthcare premium from the retirees' pension or separately bill them for the amount due, they still must pay the premium.

The plaintiffs also contend that the trial court erred because it focused upon whether the premium deduction substantially impairs the retirees' overall net worth, rather than whether the chosen method of collection substantially impairs the retirees' right to receive their full pensions. In this case, as previously stated, RSA 100-A:54, III does not reduce the retirees' pensions. Moreover, the cases the plaintiffs rely upon all consider whether the *reduction* in pay would substantially impair the employees' overall financial situation; we conclude that the trial court did not err in considering the retirees' overall financial situation here. *See Ass'n of Surrogates*, 940 F.2d at 772 (holding that withholding an amount equal to ten percent of an employee's pay over a ten-week period could prevent an employee from meeting financial obligations such as mortgages, loans and credit card payments).

■ We also note that the medical and surgical benefits under RSA 21-I:30 are voluntary and the plaintiffs do not contend that retirees are unaware that they may decline coverage. The plaintiffs acknowledged at oral argument that the crux of this dispute is not whether the State may charge retirees a premium toward their healthcare, but how the State can collect that premium. Given that the retirees who are covered must pay the premium in one manner or another, we cannot say that any alleged alteration of contractual obligations is anything other than minimal. *See Tuttle*, 159 N.H. at 649 (explaining that "[m]inimal alteration of contractual obligations may end the inquiry" of whether a substantial impairment has occurred (quotation omitted)). Accordingly, because the calculation of each retiree's pension remains unchanged, the deduction does not substantially impair their vested right to receive a full pension. *See Lippman v. Board of Educ. of Sewanhaka*, 487 N.E.2d 897, 900 (N.Y. 1985) ("The result of a reduction in the proportion of the health insurance premium paid . . . is that a retiree will receive a smaller retirement check, but this is no more a change in retirement benefits than would be an increase in the price of eggs

at the supermarket or in a retiree's apartment rent. The retiree has less to spend, but there has been no change in his *retirement benefit*."). Because we have determined that the automatic premium deduction does not substantially impair the retirees' vested rights to a full pension, we need not consider whether the deduction is reasonable and necessary to serve an important public purpose.

## II

The plaintiffs next argue that RSA 100-A:54, III violates the Contract Clauses of the New Hampshire and United States Constitutions because it impairs the retirees' right to the anti-alienation protections provided by RSA 100-A:26-a. The plaintiffs contend that RSA 100-A:26-a acts as an anti-alienation statute that only allows for the assignment, attachment and execution of the retirees' benefits to the extent allowed under the Employee Retirement Income Security Act (ERISA). The plaintiffs argue that RSA 100-A:26-a was incorporated as a term of the retirees' contract with the NHRS, and because ERISA does not permit the alienation authorized by RSA 100-A:54, III, that statute impermissibly impairs their contract with the NHRS.

The defendants contend that RSA 100-A:26-a is not an anti-alienation statute, but rather a statute intended as an exception to RSA 100-A:26 (2001) by providing specific circumstances under which the retirees' benefits may be subject to assignment, attachment and execution. The defendants argue that RSA 100-A:54, III merely provides an additional circumstance under which the retirees' benefits may be subject to assignment, attachment and execution, and is therefore consistent with RSA 100-A:26 and 100-A:26-a.

Resolution of this issue requires that we engage in statutory interpretation. The interpretation of a statute is a question of law, which we review *de novo. Zorn v. Demetri*, 158 N.H. 437, 438 (2009). In matters of statutory interpretation, we are the final arbiter of the intent of the legislature as expressed in the words of the statute considered as a whole. *Id.* We first look to the language of the statute itself, and, if possible, construe that language according to its plain and ordinary meaning. *LLK Trust v. Town of Wolfeboro*, 159 N.H. 734, 736 (2010). We interpret legislative intent from the statute as written and will not consider what the legislature might have said or add language that the legislature did not see fit to include. *Id.* We construe all parts of a statute together to effectuate its overall purpose and avoid an absurd or unjust result. *Id.* Moreover, we do not consider words and phrases in isolation, but rather within the context of the statute as a whole. *Id.* This enables us to better discern the legislature's intent and to

interpret statutory language in light of the policy or purpose sought to be advanced by the statutory scheme. *Id.*

We begin by examining the language of RSA 100-A:26, the anti-alienation statute, which the plaintiffs claim was effectively replaced by RSA 100-A:26-a. RSA 100-A:26 provides:

> The right of a person to any benefit or to any other right accrued or accruing to any person under the provisions of this chapter, and the monies in the funds created hereby, shall be exempted from any state, county or municipal tax in the state, and shall not be subject to execution, trustee process, attachment or any other process whatsoever, legal or equitable, and shall be unassignable *except as herein specifically provided.*

(Emphasis added.)

Thus, unless the legislature specifically provides for an exception, RSA 100-A:26 prohibits any alienation of the retirees' benefits. In *Fowler v. Fowler*, 116 N.H. 446 (1976), we rejected a wife's attempt to attach the husband's retirement benefits for the support of his minor children by court order because the plain language of RSA 100-A:26 did not allow the court to carve out exceptions to the anti-alienation statute not specifically provided for by the legislature. *Id.* at 449. In the wake of *Fowler*, the legislature passed RSA 100-A:26-a in order to specifically provide certain exceptions to the anti-alienation statute. *See* Laws 1977, ch. 465 ("An act . . . relative to the assignment, attachment and execution of benefits under the New Hampshire and Policemen's Retirement Systems."). RSA 100-A:26-a provides:

> Notwithstanding any provision of law to the contrary, the right of a person to any benefit or to any other right accrued or accruing to any person under the provisions of this chapter, and the monies in the funds created hereby shall be subject to assignment, attachment and execution to the same extent as such rights under private retirement systems.

Private retirement systems are governed by ERISA. 29 U.S.C. §§ 1001-1461 (2006 & Supp. 2008). According to the plain language of RSA 100-A:26-a, if a retiree's benefits would be subject to assignment, attachment or execution under ERISA, those benefits are subject to assignment, attachment and execution under New Hampshire law. RSA 100-A:26-a simply provides for specific exceptions to the anti-alienation provisions of RSA 100-A:26. Thus, we reject the plaintiffs' contention that RSA 100-A:26-a is an anti-alienation statute which was meant to replace RSA

100-A:26. There is nothing in the plain language of RSA 100-A:26-a that prohibits the legislature from adding additional exceptions to RSA 100-A:26.

■ RSA 100-A:54, III is another exception to the anti-alienation statute specifically provided for by the legislature. The statute directs the retirement system to deduct from the monthly retirement allowance of retired state employees under the age of sixty-five a premium contribution for those retirees receiving state health benefits. Because RSA 100-A:26 specifically authorizes the legislature to provide for exceptions, RSA 100-A:54, III is consistent with that statute.

Additionally, because we have determined that RSA 100-A:54, III does not impair or conflict with any rights provided by RSA 100-A:26-a, we need not resolve the plaintiffs' contention that RSA 100-A:26-a is "a term of the contract between the State and Retirees."

■ In sum, RSA 100-A:26 stands as an anti-alienation statute with regard to the retirement benefits of retirees in this state. These benefits are not subject to assignment, attachment or execution except as specifically provided by the legislature. RSA 100-A:26-a specifically provides for exceptions to the anti-alienation statute and ties these exceptions to those permitted under ERISA. None of the exceptions provided in RSA 100-A:26-a are implicated in this case, and thus that statute is inapplicable here. RSA 100-A:54, III is simply another exception to the anti-alienation statute specifically provided for by the legislature. The plain language of RSA 100-A:26, RSA 100-A:26-a, and RSA 100-A:54, III demonstrates no conflict among them. Because RSA 100-A:54, III is consistent with the anti-alienation statute, it does not impair the plaintiffs' right to the anti-alienation protections and thus does not violate the Contract Clauses of the State and Federal Constitutions.

### III

Finally, the plaintiffs argue that RSA 100-A:54, III contravenes Part I, Article 36-a of the New Hampshire Constitution, which provides in pertinent part that "all contributions and payments made to [the New Hampshire retirement system] to provide for retirement and related benefits shall be held, invested or disbursed as in trust for the exclusive purpose of providing for such benefits and shall not be encumbered for, or diverted to, any other purposes."

■ When our inquiry requires us to interpret a provision of the constitution, we must look to its purpose and intent. *Warburton v. Thomas*, 136 N.H. 383, 386-87 (1992). We first look to the natural significance of the words used by the framers. *Judicial Ret. Plan*, 161 N.H. at 53. "The

simplest and most obvious interpretation of a constitution, if in itself sensible, is most likely to be that meant by the people in its adoption." *Id.* (quotation omitted). Additionally, "we will give the words in question the meaning they must be presumed to have had to the electorate when the vote was cast." *N.H. Munic. Trust Workers' Comp. Fund v. Flynn, Comm'r,* 133 N.H. 17, 21 (1990) (quotation omitted).

The plaintiffs contend that RSA 100-A:54, III violates Article 36-a because it causes the diversion of the retirees' pension funds to pay for their healthcare expenses. However, we have already determined that the retirees receive the full value of their pensions. Because the health insurance premiums do not decrease the retirees' pensions, we find that there is no diversion of the retirees' pension funds under RSA 100-A:54, III.

In *Judicial Retirement Plan*, we recognized that the purpose of Article 36-a was "to ensure that the State cannot use retirement system assets to fund other State operations." *Judicial Ret. Plan,* 161 N.H. at 56. Here, the retirement system assets are being used to pay the benefits to each retiree, and not to fund other State operations. The retirement system then deducts the premium contribution from the allowance of each individual retiree. Thus, each retiree receives the full allowance of the retirement benefit from the retirement system assets, from which the retirement system deducts the premium contribution. The state health benefits are optional and are only deducted from those retirees opting to receive them. Should any retiree opt out of the benefit, the deductions would cease for that individual retiree. Because there is no diversion of the pension funds under RSA 100-A:54, III and the retirement system assets are not being used to fund other State operations, we find no violation of Article 36-a.

*Affirmed.*

DALIANIS, C.J., and HICKS and LYNN, JJ., concurred.