NOTICE:  This opinion is subject to motions for rehearing under Rule 22 as well as formal revision before publication in the New Hampshire Reports. Readers are requested to notify the Reporter, Supreme Court of New Hampshire, One Charles Doe Drive, Concord, New Hampshire 03301, of any editorial errors in order that corrections may be made before the opinion goes to press.  Errors may be reported by E-mail at the following address: reporter@courts.state.nh.us. Opinions are available on the Internet by 9:00 a.m. on the morning of their release. The direct address of the court's home page is: http://www.courts.state.nh.us/supreme.

THE SUPREME COURT OF NEW HAMPSHIRE

_____

Cheshire
No. 2013-359


IN THE MATTER OF THE STATE OF NEW HAMPSHIRE
AND CORY R. LOUNDER

Submitted:  March 6, 2014
Opinion Issued:  June 13, 2014


Sederquest Law Office, of Peterborough (Rachel Sederquest on the brief), for the respondent.


Joseph A. Foster, attorney general, for the State, filed no brief.


The petitioner, self-represented, filed no brief.


LYNN, J.  The respondent, Cory R. Lounder, appeals an order of the Superior Court (Kissinger, J.) denying his petition to modify child support.  He argues that the trial court erred by concluding that his incarcerated status made him ineligible for a reduction in support.  We reverse and remand.

The following facts were found by the trial court or are supported by the record.  In November 2009, the trial court approved a uniform support order that obligated the respondent to pay $109 per week in child support to the mother of his children.  At that time, the respondent was employed full-time and earning $9.50 per hour.  He was subsequently convicted of arson, for

which he was sentenced to prison in February 2013. He is ineligible for release before 2016. As a consequence of his incarceration, the respondent lost his employment and has no other sources of income. In August 2012, he filed a petition requesting a reduction in his support obligation to $50 per month, the minimum support order, based upon a substantial change of circumstances. See RSA 458-C:7, I(a) (2004 & Supp. 2013).

Following a hearing, the court denied the respondent's petition, stating: "[The respondent's] incarcerated status does not warrant a reduction in his child support obligation." The respondent moved for reconsideration, which the court denied "for the reasons discussed in Noddin v. Noddin, 123 N.H. 73, 76 (1983)." This appeal followed.

On appeal, the respondent argues that the trial court erred: (1) by concluding that his incarcerated status did not qualify as a substantial change of circumstances; and (2) by equating incarceration with voluntary unemployment.

We first address whether the trial court erred by ruling that the respondent's incarceration did not qualify as a substantial change of circumstances. "Because trial courts are in the best position to determine the parties' respective needs and their respective abilities to meet them, we will not disturb the trial court's rulings regarding child support absent an unsustainable exercise of discretion or an error of law." In the Matter of Muller & Muller, 164 N.H. 512, 520-21 (2013) (citation omitted).

To resolve this appeal, we must interpret RSA chapter 458-C (2004 & Supp. 2013). "The interpretation of a statute is a question of law, which we review de novo. State Employees' Assoc. of N.H. v. State of N.H., 161 N.H. 730, 738 (2011). "In matters of statutory interpretation, we are the final arbiter of the intent of the legislature as expressed in the words of the statute considered as a whole." Id. "We first look to the language of the statute itself, and, if possible, construe that language according to its plain and ordinary meaning." Id. "We interpret legislative intent from the statute as written and will not consider what the legislature might have said or add language that the legislature did not see fit to include." Id. "We construe all parts of a statute together to effectuate its overall purpose and avoid an absurd or unjust result." Id. "Moreover, we do not consider words and phrases in isolation, but rather within the context of the statute as a whole." Id.

RSA 458-C:7, I(a) authorizes a parent to apply for modification of an existing support order:

> The obligor or obligee may apply to the court . . . for modification of such order 3 years after the entry of the last order for support,

without the need to show a substantial change of circumstances. This section shall not prohibit the obligor or obligee from applying at any time for a modification based on substantial change of circumstances.

"To obtain a modification of support obligations within three years of the entry of the last order of support, the moving party must show a substantial change in circumstances that makes continuing the original order improper and unfair." In the Matter of Lynn & Lynn, 158 N.H. 615, 617 (2009). "Although RSA 458-C:7 does not specify what constitutes a substantial change in circumstances, the trial court may consider a variety of factors in determining whether the financial situation of the parties has changed and whether modification is required." Id. "In determining whether a substantial change in circumstances exists, the trial court will look at the needs of the parties and their respective abilities to meet those needs." In the Matter of Adams & Houle, 156 N.H. 257, 259 (2007) (quotation omitted). "This is a fact-specific inquiry that requires the admission of evidence as to the parties' needs and abilities." Id.

Incarceration can have a direct effect on a parent's income by causing loss of employment, and the loss of employment-related income can substantially change an inmate's ability to pay child support. Furthermore, inmates lack the ability to obtain new employment while incarcerated. Because incarceration may cause a substantial change of circumstances sufficient to warrant modification, the trial court must consider incarceration when determining whether to modify a child support order. This does not, however, preclude a court from determining that a parent has remaining sources of income such that modification is unwarranted. See RSA 458-C:2, IV (2004 & Supp. 2013).

In this case, the record shows that the respondent's incarceration caused a substantial change of circumstances because he lost his employment due to his incarceration, had no ability to obtain employment while incarcerated, and possessed no other source of income. As noted above, the trial court relied upon Noddin v. Noddin, 123 N.H. 73 (1983), when it concluded that the respondent's incarceration did not cause a substantial change of circumstances. This reliance was misplaced. Prior to the enactment of RSA chapter 458-C, we had held that a parent who was terminated from employment because of his own wrongdoing was not eligible for a reduction in support payments due to his reduced ability to pay. Noddin, 123 N.H. at 76. After the enactment of RSA chapter 458-C, however, we have repeatedly held that RSA 458-C:2, IV(a) supersedes our decision in Noddin. See In the Matter of Sarvela & Sarvela, 154 N.H. 426, 436 (2006); In the Matter of Rossino & Rossino, 153 N.H. 367, 370 (2006). Therefore, the trial court erred by relying

upon Noddin and by failing to conclude that the respondent's incarceration caused a substantial change of circumstances.

We next address whether the trial court erred by concluding that the respondent's incarceration constituted voluntary unemployment. "Whether a party is voluntarily unemployed is a question for the fact finder, whose decision will not be disturbed on appeal if supported by evidence in the record." Muller, 164 N.H. at 521. In making this determination, a court should consider the circumstances surrounding a parent's departure from employment, including whether the parent's termination from prior employment was involuntary, Sarvela, 154 N.H. at 436, and whether there is evidence of the parent's intent to avoid child support payments, Muller, 164 N.H. at 521. "A parent who is involuntarily terminated from his or her employment . . . did not 'voluntarily' become unemployed or underemployed," even if termination is caused by an employee's own wrongful conduct. Sarvela, 154 N.H. at 436 (citation omitted). Similarly, then, incarceration that causes termination does not cause a parent to become "voluntarily" unemployed for purposes of modifying a child support order. Additionally, a party's intent to avoid child support is relevant to the question of voluntary unemployment. See Muller, 164 N.H. at 521-22.

There is no evidence in the record from which the trial court could have found that the respondent is voluntarily unemployed: he was involuntarily terminated from his employment following his arrest and incarceration. Likewise, there is no evidence that his motive for committing the crime which led to his incarceration was to avoid his child support obligations. While a trial court has discretion to impute income upon a finding of voluntary unemployment, it cannot impute income without such a finding. See RSA 458-C:2, IV(a). Therefore, the trial court erred by equating incarceration with voluntary unemployment and imputing to the respondent his pre-incarceration income.

Because the respondent had no gross income and was not voluntarily unemployed or underemployed, the trial court should have applied RSA 458-C:3, IV(a), which states: "If the obligor parent's gross income is less than the self-support reserve and the court has determined that the obligor is not voluntarily unemployed or underemployed, the court shall order the child support obligation in the amount of a minimum support order." Accordingly, we reverse and remand for entry of an order consistent with this opinion.

Reversed and remanded.

DALIANIS, C.J., and HICKS, CONBOY, and BASSETT, JJ., concurred.

4