NOTICE: This opinion is subject to motions for rehearing under Rule 22 as well as formal revision before publication in the New Hampshire Reports. Readers are requested to notify the Reporter, Supreme Court of New Hampshire, One Charles Doe Drive, Concord, New Hampshire 03301, of any editorial errors in order that corrections may be made before the opinion goes to press. Errors may be reported by E-mail at the following address: reporter@courts.state.nh.us. Opinions are available on the Internet by 9:00 a.m. on the morning of their release. The direct address of the court's home page is: http://www.courts.state.nh.us/supreme.

THE SUPREME COURT OF NEW HAMPSHIRE

_____

Hillsborough-northern judicial district
No. 2012-914


AUTOFAIR 1477, L.P.

v.

AMERICAN HONDA MOTOR COMPANY, INC.

Argued: April 3, 2014
Opinion Issued: August 22, 2014


Holmes Law Offices PLLC, of Concord (Gregory A. Holmes on the brief and orally), for the plaintiff.


Campbell Campbell Edwards & Conroy, P.C., of Boston, Massachusetts (James M. Campbell on the brief and orally), for the defendant.


LYNN, J. The plaintiff, Autofair 1477, L.P., doing business as Autofair Honda (Autofair), appeals an order of the Superior Court (Garfunkel, J.) denying its motion for summary judgment and granting summary judgment to the defendant, American Honda Motor Company, Inc. (AHM), on the plaintiff's petition for attorney's fees. We affirm.

The following facts are drawn from the record or are otherwise undisputed. AHM, located in Torrance, California, is a manufacturer and distributor of Honda brand automobiles. Autofair is an authorized Honda

dealer located in Manchester. The relationship between the parties, pursuant to which AHM supplies new vehicles that it manufactured to Autofair for sale, is governed by the Automobile Dealer Sales and Service Agreement (the Agreement). Under the Agreement, Autofair is obligated to perform warranty work on Honda vehicles pursuant to AHM's Service Operations Manual, and AHM later reimburses Autofair for that work. However, AHM may later charge back any amount paid for a warranty repair if, as the result of a warranty audit, AHM determines that Autofair did not follow AHM's policies and procedures. Both parties are also subject to the provisions of RSA chapter 357-C (2009 & Supp. 2013) (the Dealership Act), which regulates the business practices between motor vehicle manufacturers, distributors, and dealers.

In November 2010, AHM performed a warranty audit at Autofair, after which it proposed $45,733.02 of chargebacks and a potential escrow reversal of $54,571.17 for claimed warranty work that deviated from AHM's policies and procedures. AHM did not debit Autofair's account for these amounts. Autofair filed an "internal appeal" with AHM, contesting the escrow reversal and $30,001.51 of the proposed chargebacks. After review, AHM reduced the amount of the proposed chargebacks to $43,957.94.

In February 2011, Autofair filed a protest with the New Hampshire Motor Vehicle Industry Board (the Board) pursuant to the Dealership Act. Even though AHM had neither debited Autofair's account nor held any disputed funds in escrow, Autofair specifically requested a "finding and ruling that the warranty audit charge backs and the [proposed] escrow violate RSA 357-C:4 and RSA 357-C:5, that the audit charge backs be reversed, and the escrow funds released."

Prior to a final hearing before the Board, the parties had ongoing discussions and reduced the disputed amount to $29,729.92, and Autofair withdrew its request for relief regarding the proposed escrow.[1] The Board conducted a hearing in October 2011. Following the hearing, in a written order, the Board affirmatively ruled on whether Autofair had reasonably substantiated each of the 123 claims still at issue, and thus whether AHM was entitled to charge back the amounts associated with each claim. In total, the Board determined that AHM was entitled to charge back claims totaling $1,032.13, but not the remaining $28,697.79 of disputed claims. The Board also stated that because "Honda has paid the claims, and not held the funds in escrow, the request in the protest to find a statutory violation due to same is moot." Finally, the Board ordered Autofair to pay $1,032.13 to AHM, with interest.

---

[1] In a sworn affidavit, a representative of Autofair said that the escrow portion of its protest became moot when AHM informed Autofair that it was not planning to escrow funds, and Autofair so advised the Board.

In January 2012, Autofair filed a petition for attorney's fees and costs with the trial court pursuant to RSA 357-C:12, X (2009). The statute provides, in pertinent part, that a prevailing party is entitled to reasonable attorney's fees and costs when the Board finds that the other party violated the Dealership Act. See RSA 357-C:12, X. Both parties moved for summary judgment. The trial court denied Autofair's motion and granted AHM's cross-motion. It based its ruling upon the fact that the Board had not found that AHM committed a violation of the Dealership Act because it had not charged back Autofair, and the court's conclusion that an award of fees would not be consistent with the public policy behind the Dealership Act. This appeal followed.

While this appeal was pending, the legislature amended RSA chapter 357-C and added the following definition of "chargeback" to the statute, effective September 23, 2013 (the Amendment): "'Chargeback' means a manufacturer induced return of warranty, incentive, or reimbursement payments to a manufacturer by a dealer. The term includes a manufacturer drawing or an announced intention to draw funds from an account of a dealer." RSA 357-C:1, XXX (Supp. 2013). Because it could affect the outcome of the appeal, before addressing the merits, we must determine whether the legislature intended the Amendment to apply retrospectively.

"We have long held that statutes are presumptively intended to operate prospectively." Appeal of Silk, 156 N.H. 539, 542 (2007). "When the legislature is silent as to whether a statute should apply prospectively or retrospectively, as is the case here, our interpretation turns on whether the statute affects the parties' substantive or procedural rights." Id. (quotation and brackets omitted). "When a statute is remedial or procedural in nature, it may be applied to cases pending at the time of enactment." Id. "If application of a new law would adversely affect an individual's substantive rights, however, it may not be applied retroactively." Id. "Nevertheless, in the final analysis, the question of retrospective application rests on a determination of fundamental fairness, because the underlying purpose of all legislation is to promote justice." Id. (quotation omitted).

Autofair argues that the Amendment is remedial and should apply retrospectively because it merely supplements the existing fee statute by providing a definition of the term "chargeback." AHM counters that the Amendment is substantive and applies only prospectively because, by defining "chargeback" to include both a manufacturer's drawing of funds and announcement of an intention to draw funds, it expands the scope of conduct that violates the Dealership Act. To determine whether the Amendment adversely affects AHM's substantive rights, we compare AHM's rights under the Dealership Act before and after the Amendment became effective. If the application of the Amendment creates a new disability in respect to past transactions, the Amendment affects substantive rights and may not be applied retrospectively. See Lessard v. City of Manchester Fire Dep't, 118 N.H. 43, 47

(1978) (an amendment should not be applied retrospectively "so as to create a new obligation, impose a new duty or attach a new disability in respect to past transactions" (quotation omitted)); see also Martin v. Pat's Peak, 158 N.H. 735, 737, 742-43 (2009) (holding that even when legislature only sought to clarify a statutory ambiguity by defining a term, the amendment applied prospectively because the clarified intent was not clearly expressed in original version of the statute).

Resolving this issue requires us to interpret the Dealership Act. In the instant case, if AHM could propose chargebacks without violating the Dealership Act prior to the Amendment, but the Amendment now prohibits those same proposed chargebacks, then the Amendment has placed a new disability upon AHM and it may not be applied retrospectively. "The interpretation of a statute is a question of law, which we review de novo." State Employees' Assoc. of N.H. v. State of N.H., 161 N.H. 730, 738 (2011). "In matters of statutory interpretation, we are the final arbiter of the intent of the legislature as expressed in the words of the statute considered as a whole." Id. "We first look to the language of the statute itself, and, if possible, construe that language according to its plain and ordinary meaning." Id. "We interpret legislative intent from the statute as written and will not consider what the legislature might have said or add language that the legislature did not see fit to include." Id. "We construe all parts of a statute together to effectuate its overall purpose and avoid an absurd or unjust result." Id. "Moreover, we do not consider words and phrases in isolation, but rather within the context of the statute as a whole." Id.

We first determine AHM's rights under the Dealership Act prior to the application of the Amendment. The Act's fees section, RSA 357-C:12, X, provides: "In cases where the board finds that a violation of this chapter has occurred or there has been a failure to show good cause under RSA 357-C:7 or RSA 357-C:9, the superior court, upon petition, shall determine reasonable attorney's fees and costs and award them to the prevailing party." Under the plain language of the statute, assuming, without deciding, that Autofair is a "prevailing party," Autofair is entitled to attorney's fees only if AHM violated the Dealership Act. Autofair argues that AHM violated RSA 357-C:5, II(b)(1) (Supp. 2012) (amended 2013). In its order, the Board expressly declined to find that AHM had violated the statute. Nevertheless, Autofair urges us to rule that the Board implicitly found that AHM violated RSA 357-C:5, II(b)(1) when the Board determined that AHM was not entitled to charge back $28,697.79 of the proposed chargebacks. RSA 357-C:5, II(b)(1) provides, in relevant part:

No claim which has been approved and paid by the manufacturer or distributor may be charged back to the dealer unless it can be shown that the claim was false or fraudulent, that the repairs were not properly made or were unnecessary to correct the defective condition, or that the dealer failed to reasonably substantiate that

4

the claim was in accordance with the written requirements of the manufacturer or distributor in effect at the time the claim arose.

The language "[n]o claim . . . may be charged back" plainly prohibits only actual chargebacks. Actual and proposed chargebacks are different actions that have different effects: Actual chargebacks deprive dealers of the use of funds, while proposed chargebacks cause no such deprivation.

This interpretation is reinforced by the legislature's treatment of "chargeback" and "proposed chargeback" in the statute as a whole. We find RSA 357-C:5, II(d)(5) instructive because it differentiates between actual and proposed chargebacks while setting out the procedure for how a manufacturer may make a chargeback:

> Any chargeback resulting from any audit shall not be made until a final order is issued by the New Hampshire motor vehicle industry board if a protest to the proposed chargeback is filed within 30 days of the notification of the final amount claimed by the manufacturer . . . to be due after exhausting any procedure established by the manufacturer . . . to contest the chargeback, other than arbitration.

This statutory provision shows that making a chargeback and proposing a chargeback are two distinct and separate actions. Therefore, RSA 357-C:5, II(b)(1) clearly and unambiguously prohibits only making certain chargebacks; it does not prohibit proposing chargebacks. In the instant case, AHM did not violate RSA 357-C:5, II(b)(1) because AHM did not debit Autofair's account for the proposed chargebacks that the Board determined Autofair had reasonably substantiated. Therefore, AHM would not be liable for attorney's fees under the Act prior to the Amendment. See RSA 357-C:12, X.

We next determine AHM's rights under the Dealership Act after the enactment of the Amendment. The Amendment did not change the relevant language of either RSA 357-C:5, II(b)(1) or RSA 357-C:12, X, but it did define the term "chargeback." See RSA 357-C:1, XXX. Incorporating the newly codified definition of chargeback, a manufacturer can violate RSA 357-C:5, II(b)(1) either by withdrawing funds or by announcing an intention to withdraw funds from a dealer for claims that the dealer can reasonably substantiate. Id. In the instant case, because AHM announced its intention to charge back warranty claims that the Board later determined that Autofair had reasonably substantiated, and again assuming, without deciding, that Autofair was a prevailing party, AHM's proposed chargebacks would violate RSA 357-C:5, II(b), and AHM would thus be liable for attorney's fees under RSA 357-C:12, X.

Because AHM's proposed chargebacks would not violate the Dealership Act prior to the enactment of the Amendment, but would violate RSA 357-C:5,

5

II(b) under the amended statutory scheme, the Amendment creates a new disability by prohibiting conduct that was previously allowed. The Amendment adversely affects AHM's substantive rights, and, therefore, we will not apply it retrospectively.

We turn now to the merits of Autofair's appeal regarding its request for attorney's fees and costs. Autofair argues that the trial court erred by denying its petition for attorney's fees because: (1) the trial court misconstrued the Dealership Act and the Board's order when it concluded that the Board did not find that AHM had violated the statute; and (2) the trial court's construction of the Dealership Act is inconsistent with its statutory purpose as evidenced by its legislative history. "In reviewing the trial court's rulings on cross-motions for summary judgment, we consider the evidence in the light most favorable to each party in its capacity as the nonmoving party." Eby v. State of N.H., 166 N.H. ___, ___ (decided June 13, 2014). "Where, as here, the parties agree that there are no genuine issues of material fact in dispute, our task in reviewing the trial court's summary judgment rulings is to determine whether the moving party is entitled to judgment as a matter of law." Id. "In such circumstances, the analysis for summary judgment purposes is not meaningfully different from that employed in ruling on a motion to dismiss." Id.

Autofair argues that it is entitled to fees under RSA 357-C:12, X because the Board implicitly found in its order that AHM had violated RSA 357-C:5, II(b). As noted above, the Board did not expressly find a statutory violation. To the contrary, it declined to find a statutory violation, reasoning that because AHM "has paid the claims, and not held the funds in escrow, the request in the protest to find a statutory violation due to same is moot."[2] Instead, the Board decided, for each proposed chargeback, whether or not AHM was entitled to make the chargeback. Because we have already determined that proposed chargebacks did not violate RSA 357-C:5, II(b)(1) prior to the Amendment, the Board's order cannot constitute an implicit finding of a statutory violation. Therefore, AHM did not violate RSA 357-C:5, II(b)(1) or any other provision of the Dealership Act. Because Autofair can be awarded attorney's fees under RSA 357-C:12, X only in cases where the Board finds that a violation of the Dealership Act has occurred, we affirm the trial court's ruling that AHM was entitled to judgment as a matter of law.

Because we have determined that RSA 357-C:5, II(b) and RSA 357-C:12, X are clear and unambiguous, we need not address Autofair's final argument

---

[2] Autofair argues that the Board's reference to an "escrow" in this statement was to AHM's potential escrow reversal, which Autofair had challenged before withdrawing its request for relief on that issue. Whether or not this statement was in reference to that withdrawn request or to its protest of the proposed chargebacks, even viewing this statement in the light most favorable to Autofair, it is still silent on the issue of whether AHM's proposed chargebacks violated the Dealership Act, and, therefore, neither interpretation changes our determination that the Board did not expressly or implicitly find a statutory violation.

— that this interpretation of the statute is inconsistent with the statute's purpose as evidenced by its legislative history.  See In re Guardianship of Eaton, 163 N.H. 386, 389 (2012) ("We do not consider legislative history to construe a statute that is clear on its face.").

Affirmed.

DALIANIS, C.J., and HICKS, CONBOY, and BASSETT, JJ., concurred.